**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:12CR370 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & |
| ISAAC GREEN, JR., | ) | ORDER |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court upon defendant's request for notice of the government's intention to use evidence at trial (Doc. No. 18) and his motion for notice of other crimes, wrongs, or acts intended to be introduced at trial (Doc. No. 19). The government filed a response, indicating it intends to introduce evidence of narcotics purchased at 130 Upland Avenue as described in the search warrant affidavit, as well as evidence of narcotics, drug paraphernalia, and forged checks found during execution of the search warrant at that address. (Doc. No. 20.) At the final pretrial conference held on January 14, 2013, the government represented that it intends to offer this evidence as strictly background evidence. Defendant objected to the admission of the evidence as unfairly prejudicial, and the Court heard oral argument on the objection. This matter is ripe for disposition. For the reasons that follow, the Court overrules defendant's objection and finds that the evidence the government seeks to present is admissible as background evidence, the probative value of which is not outweighed by the risk of unfair prejudice.

## I.    BACKGROUND

In December 2011, the Youngstown Police Department Vice Squad began investigating suspected drug activity at a house located at "130 Upland Avenue" in Youngstown,

Ohio. (*See* Affidavit for Search Warrant, Doc. No. 27-1 at 192.) The investigation was prompted by information learned from a confidential informant ("CI"), who told officers that an unknown person was selling crack cocaine from the house and that the CI was able to buy crack cocaine from the residence. (*Id.*) Thereafter, officers began "random surveillance" of the house, during which officers saw numerous persons arrive at the house, stay for a short while, and then leave, "such activity being common in the illegal sales of narcotics." (*Id.*) Based upon the officers' experience and knowledge, they believed this activity was consistent with drug trafficking. (*Id.*)

During the week of December 12, 2011, officers met with a CI who agreed to make a "controlled buy" of crack cocaine from an unknown male at the Upland Avenue residence. (*Id.*) The CI purchased crack cocaine from a man, known to the CI as "John Doe" and described as a black male in his 50's, standing 5'8" tall, weighing 150 pounds, with black hair and brown eyes. (*Id.* at 193.) The substance purchased by the CI was field-tested with positive results. (*Id.*)

Thereafter, during the week of June 18, 2012, a CI again made two controlled crack cocaine purchases from the same man at the house on Upland Avenue. (*Id.* at 192.) Again, the substance purchased by the CI was field-tested with positive results. (*Id.* at 193.)

On June 21, 2012, Youngstown Police Department Officer Art Carter applied for and obtained a search warrant for 130 Upland Avenue and all persons on the premises. (Doc. No. 27-1 at 190, 193) The officers executed the search warrant later the same day. During the search, officers encountered Green in the living room of the home. On the first floor, officers seized two laptop computers from a back room and a loaded .357 revolver from the den. The officers also seized two digital scales, a computer monitor, a box of blank checks, two scanner/copy

machines, and several personal computers from the dining room. In an upstairs bedroom, the officers seized loose crack cocaine, $1,354.00 in United States currency, five digital scales, a plate with residue, two butter knives, a spoon, a white plastic bowl, a wood dowel, a razor blade, $91.00 in counterfeit United States currency, a laptop computer, a computer printer, 38 ink cartridges, and a mason jar containing an unknown liquid and a dollar bill. In the basement, officers seized one box of mixed shotgun shells. Outside the house, officers seized a box of checks, counterfeit bills, and documents from a shed and a .401 gauge shotgun, a loaded .44 magnum revolver, and a loaded 9 mm highpoint with magazine from the detached garage. (Youngstown Police Department Receipt/Inventory, Doc. 27-1 at 194-95.)

On August 1, 2012, Green was indicted on three counts, as follows: (1) possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; (2) possession of a weapon by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (3) possession of counterfeit obligations in violation of 18 U.S.C. § 472. (Doc. No. 1.)

## II.    LAW AND ANALYSIS

The government's response indicates that it intends to introduce at trial, evidence of the narcotics purchases from 130 Upland Avenue and evidence of narcotics, drug paraphernalia, and forged checks found during the search as background or *res gestae* evidence. The government also suggests that the evidence is admissible as Rule 404(b) evidence. (Doc. No. 20.)

Defendant objects to the introduction of evidence related to the four controlled drug buys from 130 Upland Avenue as other acts evidence, without an opportunity to identify the buyer (CI) and a chance to review the CI's statements, as well as subpoena the CI for trial if

necessary for cross-examination. Defendant argues that there is no evidence identifying him as the person that sold drugs from 130 Upland Avenue, and not some other person in the house. Further, defendant objects that the probative value of the evidence is outweighed by the danger of unfair prejudice. The government responds that the evidence of controlled purchases and of items found during the search is not being offered as "other act" evidence to show the identity of the person from whom the drugs were purchased or the price or quantity, but rather is offered strictly as background evidence to explain the officers' actions.

### A.  Background or *Res Gestae* Evidence

"Background" evidence, often referred to as the "*res gestae*" of the case, does not implicate Rule 404(b) because such evidence is intrinsic to the crime charged. *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000) (citing 2 JACK B. WEINSTEIN, MARGARET A. BERGER & JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 404.20[2][c] ). Crimes or other wrongs that are unrelated to the charged offense are considered "extrinsic," and are generally not admissible, except under limited circumstances. Intrinsic acts, or those "inextricably intertwined" with the crime charged, *United States v. Everett,* 270 F.3d 986, 992 (6th Cir. 2001), or "part of a single criminal episode," however, are admissible and beyond the reach of Rule 404(b). *United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir. 1995). *See also, United States v. Till*, 434 F.3d 880 (6th Cir. 2006); *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005) (concluding witness's testimony of defendant's prior drug activities "helped 'complete the story'" of witness's sale of firearm to defendant and "had at least a 'causal' and 'spatial' connection to the charged offense").

4

As the Sixth Circuit explained:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy,* 228 F.3d at 748. While such evidence is not subject to Rule 404(b) analysis, before admitting such evidence, the Court must still satisfy the traditional Rule 403 balancing test. *See Hardy,* 228 F.3d at 750.

Here, the government contends that the evidence referenced in its response is "classic" background evidence and is necessary to complete the story of the charged offenses. In support, the government relies upon the Sixth Circuit's decision in *United States v. Rhodes*, 314 F. App'x 790 (6th Cir. 2008).

In *Rhodes,* officers executed a search warrant at a two-bedroom apartment after conducting a controlled purchase of narcotics by a CI at the address. *Rhodes,* 314 F. App'x at 792. During the subsequent search, officers found three boxes of ammunition in a closet in the room where the defendant was sleeping. *Id.* In the other bedroom, where the defendant's roommate was sleeping, officers discovered a gun and cocaine. *Id.* Officers also found a bag of marijuana and a bag of cocaine on the counter in the common area and a bag of cocaine in the living room under a hat that resembled a hat officers had previously seen the defendant wearing. *Id.* The defendant was charged with being a felon in possession of ammunition but was not charged with any drug offenses. *Id.* He filed a motion in limine to exclude the evidence of drugs found in his apartment arguing it was not relevant to his knowing possession of ammunition. *Id.* at 792–93. The district court denied the motion and admitted the evidence. *Id.* In upholding the

5

district court's determination, the Sixth Circuit reasoned:

> First, the drugs were *res gestae,* or "background," evidence. . . . Evidence of the controlled purchase and drugs found at the apartment initiated this case; the drugs explain why the police raided [defendant]'s apartment. Moreover, the three baggies in the common area adjacent to [defendant]'s bedroom had a spatial and temporal connection to the ammunition. . . .
>
> Second, the drugs provided a motive for possessing the ammunition: protecting the drug stash. Contrary to [defendant]'s view that this case has 'nothing to do with drugs,' the district court followed the accepted view that guns (and naturally, ammunition) are 'tools of the trade' used to protect drugs and drug money. *See United States v. Hardin,* 248 F.3d 489, 499 (6th Cir. 2001) ("This Court has held many times that guns are 'tools of the trade' in drug transactions.").

*Id.* at 793.

The court in *Rhodes* also cited to *Till* in further support for admitting the drug related evidence. In *Till*, the court rejected the defendant's argument that the "narrative of the firearm seizure could readily have been told without mentioning" the marijuana found in the car with the firearm or crack cocaine found on the defendant's person after being booked. 434 F.3d at 884. "Instead [the court] held that the district court properly admitted the drug-related evidence as 'temporally and spatially-connected background evidence' and 'because of the propensity of people involved with drugs to carry weapons.' " *Rhodes*, 314 F. App'x at 793 (quoting *Till*, 434 F.3d at 884).

Here, as in *Rhodes*, the evidence of the controlled purchases and drugs found at 130 Upland Avenue initiated this case; the drugs explain why the police searched the house. *Rhodes*, 314 F. App'x at 793 (evidence of controlled buys and drugs in apartment initiated case and explained why police raided apartment). Moreover, the officers' observations and the narcotics, drug paraphernalia, and forged checks found in the house when executing the search warrant had a spatial and temporal connection to the guns and counterfeit obligations discovered.

The observations occurred in the days leading up to the discovery of the firearms and counterfeit obligations, and the officers discovered narcotics, drug paraphernalia, and forged checks in common areas of the house. *See id.* (drugs in common area adjacent to defendant's bedroom had spatial and temporal connection to seized ammunition). Thus, as in *Rhodes*, this evidence is "inextricably intertwined with the charged offense" such that admitting the evidence is "necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748.

Moreover, as in *Rhodes* and *Till*, the items found during the search provide a motive for defendant's possession of firearms: protection of "the drugs and drug money." *Rhodes*, 314 F. App'x at 793 ("This Court has held many times that guns are 'tools of the trade' in drug transactions.") (quoting *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001)); *Till*, 434 F.3d at 884 (noting the "propensity of people involved in drugs to carry weapons").

Defendant's argument regarding the sufficiency of the evidence linking him to the drug activity goes to the weight of the evidence, not its admissibility as background or *res gestae* evidence. *See United States v. Strong*, 485 F.3d 985, 990 (7th Cir. 2007) (holding uncharged controlled drug buys, surveillance, and drugs found in defendant's stepfather's house admissible under "inextricably intertwined" doctrine, such evidence tending to prove knowing possession of firearm, and concluding defendant's objection that there was no evidence he lived in the house or sold drugs, went to the weight, not the admissibility of the evidence); *United States v. McCreary*, No. 09-CR-20191, 2009 WL 4042128, at *4 (E.D. Mich. Nov. 20, 2009) (admitting as background evidence, officers' surveillance observations and electronic scales seized during search of house, and overruling defendant's objection that there was "no clear evidence of any drug possession or trafficking" by him in the case).

7

Accordingly, evidence of the controlled buys, offered for the limited purpose of explaining why the police searched the house, ,-as well as the evidence of narcotics, drug paraphernalia, and forged checks found during the search of that house, is admissible as *res gestae* or background evidence.

Although properly admissible as background evidence, the Court must still determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest [a] decision on an improper basis.' " *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988)). Here, while the evidence sought to be admitted is prejudicial to defendant, the Court finds that the probative value is not *substantially* outweighed by a danger of unfair prejudice.

> Without this evidence, the jury will be left speculating why the officers raided this house and what [they were] looking for in it. . . . A bare assertion that they executed a warrant on the house and ended up finding a firearm does not explain the entire story. . . . The evidence of the officers' observations is therefore necessary to properly explain the events leading up to the seizure of the firearm.

*McCreary*, 2009 WL 4042128, at \*6 (citation omitted).

## B. Rule 404(b)

The government also suggests that case law from the Sixth Circuit supports admission of the drug evidence found during the search as Rule 404(b) "other acts" evidence proving a motive for possessing guns, i.e., protecting a drug stash and a large quantity of cash. At the final pretrial conference, however, the government represented that it seeks only to introduce the evidence as background evidence and not to show the identity of the person who sold drugs

to the CI, nor to prove the price or quantity of drugs sold. The government represents that the evidence is offered for the limited purpose of explaining the officers' actions, including why they executed a search warrant at the residence, what they found during the course of the search, how and where those items were found, and the proximity of those seized items to the firearms and counterfeit obligations discovered contemporaneously thereto. In light of the government's representations, and because the Court has already determined that the evidence is admissible for these purposes as background or *res gestae* evidence, it need not reach the issue of whether this evidence is also admissible under Rule 404(b).

## III.    CONCLUSION

For all the foregoing reasons, the Court finds that the evidence the government seeks to present is admissible as *res gestae* or background evidence.

**IT IS SO ORDERED**.

Dated: January 16, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**