**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOS.  4:12-CR-00370 |
| | ) | 4:13-CV-890 |
| PLAINTIFF, | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| ISAAC GREEN, JR., | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on defendant Isaac Green, Jr.'s motion for a new trial (presumably pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure) (Doc. Nos. 90, 92) and motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 96). For the reasons that follow, defendant's motions are **DENIED**.

## I. BACKGROUND

On January 30, 2013, defendant was convicted by a jury of possession of counterfeit obligations. (Doc. No. 67.) The jury was unable to reach a verdict on two other charges: possession of unregistered firearm and felon in possession of firearm or ammunition. The government elected to re-try defendant on those two charges, and defendant's second trial began March 4, 2013. On March 5, 2013, a second jury convicted defendant of both. Attorney Nathan Ray, appointed by the Court as counsel for defendant, represented defendant at both trials.

On March 15, 2013, defendant filed a pro se motion for a new trial and to represent himself pro se henceforth. (Doc. No. 90.) The motion for a new trial is less than one page in length and states four grounds:

(1) A juror "pollut[ed]" the entire jury by discussing fears of defendant having his address with the other jurors;

(2) Defendant's counsel refused to file motions requested by defendant;

(3) Defendant's counsel refused to question certain witnesses in certain ways when counsel "knew [the witnesses] were lying"; and

(4) Defendant's counsel gave defendant "an estimated calculation of a plea arrangement which grossly misrepresented enhancements for [defendant's] base category level."

(Doc. No. 90 at 630.) Subsequently, Mr. Ray filed a motion at defendant's request asking for a ruling on the March 15 motion. (Doc. No. 92.)

On April 11, 2013, the Court held a hearing on defendant's motion for new trial and to proceed pro se. After questioning defendant, Mr. Ray, and the United States, the Court granted defendant's motion to proceed pro se and permitted Mr. Ray to withdraw as counsel, which he did. The Court also ordered the United States to respond to defendant's motion for a new trial by April 22, 2013. Having received the United States' timely response (Doc. No. 97), defendant's motion for a new trial is ripe for disposition.

Additionally, on April 19, 2013, defendant, now proceeding pro se, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. No. 96.) Defendant has not yet been sentenced; the Court continued his sentencing date pending its ruling on the Rule 33 motion for a new trial.

## II. LAW AND ANALYSIS

### A.  Motion for a New Trial

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[I]t is widely agreed that Rule 33's 'interest of

justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

Because defendant was represented by counsel when he filed his pro se motion for new trial, the Court need not address the motion at all. *United States v. Harper*, No. 1:09-CR-00093, 2009 WL 5216040, at *3 (S.D. Ohio Dec. 29, 2009). For the sake of completeness, however, the Court will evaluate the merits of defendant's motion and, since defendant filed his motion pro se, it shall be liberally construed. *Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *4 (6th Cir. June 10, 2008).

### 1. Timeliness

Under Rule 33(b)(2), "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." As regards defendant's second trial, his motion is timely, having been filed ten days after he was found guilty of possession of unregistered firearm and felon in possession of firearm or ammunition. However, the motion is more than six weeks removed from the guilty verdict against defendant in his first trial, for possession of counterfeit obligations, and defendant's motion is not in any way grounded on newly discovered evidence. Accordingly, the Court evaluates defendant's motion only with respect to his second trial.[1]

### 2. "Pollution" of the Jury

Defendant alleges that he is entitled to a new trial because a juror's alleged discussions with other jurors "pollut[ed]" the entire jury. Applying the liberal construction due a pro se defendant's filings, the Court construes this claim as alleging a violation of defendant's Sixth Amendment right to a fair trial by an impartial jury.

---

[1] At any rate, even if defendant's motion were timely with respect to his first trial, the Court's analysis and ruling would not change.

On March 5, 2013, at the start of the second day of defendant's second trial and prior to the jury entering the courtroom, the Court held a sidebar with counsel regarding Juror Number 4,[2] who had raised some concern to the jury clerk that morning about whether defendant could see his name and address on the juror questionnaire that he completed.[3] After speaking with counsel at sidebar and allowing Mr. Ray to confer with the defendant, the Court brought Juror Number 4 into the courtroom for a sidebar discussion with counsel. The Court discussed with Juror Number 4 the open nature of proceedings in our justice system and asked Juror Number 4 a series of questions designed to determine whether he could conduct his duty fairly and impartially. Juror Number 4 consistently assured the Court he could serve on the jury fairly and impartially.

Nevertheless, after the Court and counsel completed questioning Juror Number 4 at sidebar, the Court directed Mr. Ray to confer with his client regarding Juror Number 4. Defendant personally requested that Juror Number 4 be excused from the jury. As grounds for the request, Mr. Ray expressed on defendant's behalf that defendant was concerned that Juror Number 4's belief that defendant might know his name and address could influence his vote. The United States did not object to Juror Number 4's dismissal, and Juror Number 4 was excused by the Court. It was explained to the defendant that Juror Number 4 would be replaced with the first alternate juror, in response to which the defendant indicated that he was satisfied with the resolution.

---

[2] Descriptions of events occurring at defendant's second trial and the hearing on the instant motion for new trial are based upon the Court's own recollection and notes taken during the proceedings. *See United States v. Boudreau*, 564 F.3d 431, 438 n.3 (6th Cir. 2009) ("there is nothing improper about a district judge's recalling relevant past events that occurred in [her] own courtroom when ruling on a pending motion as long as the district judge also has allowed both parties adequate time to argue their positions"); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) ("when the trial judge also hears the collateral proceedings . . . that judge may rely on [her] recollections of the trial in ruling on the collateral attack").

[3] The juror questionnaires contained the jurors' names and cities and counties of residence, not their street addresses. The questionnaires were collected from the parties after the jury was seated.

During the process of excusing Juror Number 4—still without the jury present in the courtroom—the Court asked him whether he discussed his concerns regarding the juror questionnaires with any of the other seated jurors. Juror Number 4 said that he had spoken to one other juror, asking him why their names and juror numbers were listed on the questionnaires, and the other juror replied, "that's a good question." Juror Number 4 told the Court that was the extent of the discussion and that the parties did not discuss whether defendant had access to their personal information. Both attorneys indicated that they were satisfied and, thus, no further inquiry was pursued. Additionally, based upon the demeanor of Juror 4 and his response to the follow-up questions, the Court, likewise, determined that further inquiry of the other juror was unnecessary. After Juror Number 4 was excused, the first alternate juror took his place on the jury, and the issue did not come up again during the course of the trial.

There is no evidence to suggest that Juror Number 4 "discussed his fears of [defendant] having his address with other jurors," as defendant alleges. In fact, Juror Number 4 specifically represented to the Court that his conversation with another juror consisted simply of asking why their names and juror numbers were listed on the questionnaires. There is also no evidence that the jury was "pollut[ed]" or otherwise influenced by Juror Number 4's actions in any way, and the issue was not raised by defense counsel at any point during the trial.[4] Accordingly, defendant has not shown that Juror Number 4's conduct deprived him of a trial by an impartial jury, or that the interest of justice otherwise requires that he receive a new trial on this ground.

---

[4] Moreover, by failing to object to the Court's resolution of the issue, defendant waived his claim. *See United States v. Thomas*, 370 F. App'x 8, 14–15 (11th Cir. 2010) (defendant waived his argument that he was denied a fair trial due to an allegedly tainted jury when he acknowledged that he was "satisfied" with the court's resolution of the issue at the time); *United States v. Zizzo*, 120 F.3d 1338, 1349 (7th Cir. 1997) (defense counsel waived issue by withdrawing an objection to the court's decision not to question other jurors about whether they overheard a conversation between defendants); *United States v. Neal*, 692 F.2d 1296, 1307 (10th Cir. 1982) (by stipulating to the removal of a juror, "defendant affirmatively waived his right to complain about any taint to the remainder of the jury resulting from" a remark made by the juror in Court).

### 3. Ineffective Assistance of Counsel

Defendant's remaining grounds for his motion for new trial are effectively a claim that defendant's counsel, Mr. Ray, provided ineffective assistance in that he: (1) refused to file motions requested by defendant; (2) refused to question certain witnesses in certain ways when counsel "knew [the witnesses] were lying"; and (3) gave defendant "an estimated calculation of a plea arrangement which grossly misrepresented enhancements for [defendant's] base category level."

A violation of defendant's Sixth Amendment right to effective assistance of counsel is a "substantial legal error" that requires the granting of Rule 33 relief. *Munoz*, 605 F.3d at 373. "Less clear[,]" however, "is whether a district court may grant Rule 33 relief . . . where a defendant . . . establishes that trial counsel's performance was in some way substandard, although not egregious enough to constitute a Sixth Amendment right-to-counsel violation—i.e., where a defendant shows 'ineffective assistance light.'" *Id.* at 374 (noting a circuit split on the issue, but not deciding it, because the district court below had found that a "full-fledged Sixth Amendment right-to-counsel violation had occurred").

Under the Sixth Amendment, a defendant is denied the effective assistance of counsel when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this test, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) that "counsel's performance [was] prejudicial to the defense . . . ." *Id.* at 688, 692. Although the Sixth Circuit "ha[s] never considered the viability of an 'ineffective assistance light' claim," it "ha[s] repeatedly cited and applied *Strickland* in holding that a district court did not abuse its discretion

6

in *refusing* to grant a new-trial motion on ineffective-assistance grounds." *Munoz*, 605 F.3d at 375 (emphasis in original). Accordingly, the Court evaluates defendant's ineffective-assistance claims under the *Strickland* standard.

Counsel's performance is objectively unreasonable only where "the identified acts or omissions were outside the wide range of professionally competent assistance," as determined by "prevailing professional norms." *Strickland*, 466 U.S. at 690. In reviewing the adequacy of counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. "[T]he defendant must overcome the presumption that, under the circumstances, [a] challenged action [or omission] might be considered sound trial strategy." *Id.* (internal quotation omitted). "[T]he Sixth Amendment guarantees reasonable competence, not perfect litigation." *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case." *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006).

*a.  Refusal to File Motions*

In his motion for a new trial, defendant contends that he "asked Atty. Ray to file certain motions . . . and he refused." (Doc. No. 90 at 630.) At the hearing, after the Court cautioned defendant that his discussions with Mr. Ray were protected by attorney-client privilege, defendant explained that he was referring to asking Mr. Ray to file (or renew) the

7

motion to suppress that defendant's previous appointed counsel had filed (Doc. No. 17), along with certain documents previous counsel had attempted to bring in as exhibits. At the time defendant asked Mr. Ray to file the motion anew, with supporting documents, the Court had already held a hearing on the original motion, considered and excluded the documents, and denied the motion in a memorandum opinion and order. (Doc. No. 28.) Mr. Ray's decision not to renew the motion and present documents upon which the Court had already ruled was clearly not objectively unreasonable. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance"). Moreover, defendant offers no argument that he was prejudiced by Mr. Ray's decision not to do so, nor could he, as the Court had already considered and ruled upon the issue that defendant claims he wanted his new counsel, Mr. Ray, to pursue. *See Beauchamp v. McKee*, 488 F. App'x 987, 993 (6th Cir. 2012) (a defendant is not prejudiced when his counsel fails to take "an ultimately futile action").

### b.  Refusal to Question the Credibility of Certain Witnesses

Next, defendant's motion indicates that he asked Mr. Ray "to question certain witnesses pertaining to their credibility, when Atty. Ray knew they were lying[,] and he refused." (Doc. No. 90 at 630.) At the hearing, defendant alluded generally to police officers that he believes lied on the stand, as well as specifically to the fact that officers testified that drugs allegedly bought from the home in which Mr. Green was found were cocaine, while a field test report pertaining to those particular drugs indicated that they were heroin. However, Mr. Ray cross-examined each witness, discussing the cocaine-heroin discrepancy and other factual disputes (such as the description of the person from whom the drugs were allegedly purchased) on multiple occasions. Thus, the record fails to support defendant's factual allegations and, likewise, fails to demonstrate that Mr. Ray was objectively unreasonable in his questioning of

witnesses. Even if defendant had shown that Mr. Ray could have conducted a better cross-examination of the prosecution's witnesses, "[i]mpeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Jalowiec v. Bradshaw*, No. 1:03 CV 0645, 2008 WL 312655, at *86 (N.D. Ohio Jan. 31, 2008) (quoting *Johnson v. Hofbauer*, 159 F. Supp. 2d. 582, 607 (E.D. Mich. 2001). In addition, defendant again offers no evidence that Mr. Ray's questioning of witnesses prejudiced his defense. *See Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.").

### c.  Erroneous Description of Plea Offer

Finally, defendant alleges in his motion that "Atty. Ray gave me an estimated calculation of a plea arrangement which grossly misrepresented enhancements for my base category level." (Doc. No. 90 at 630.) At the hearing, defendant stated that he was referring to an event occurring after his conviction for possession of counterfeit obligations at his first trial, but before the United States had decided to re-try him on the other two counts. At that time, according to defendant, Mr. Ray purportedly presented defendant with "an estimated calculation of a plea arrangement" that allegedly indicated an incorrectly inflated sentencing enhancement related to the amount of counterfeit money defendant possessed. Mr. Ray explained, however, that this was not a plea agreement, but his own estimate of what defendant's sentence might be if the United States chose not to re-try him on the other two counts, in which case he would be sentenced only on his conviction for possession of counterfeit obligations. Both Mr. Ray and counsel for the United States represented to the Court that there was never a plea offer made to defendant regarding solely the count of possession of counterfeit obligations and that all of the

9

plea offers made to the defendant were for a resolution of all counts and were placed on the record, in defendant's presence, at the appropriate time. Counsel for the United States reiterated that all of his plea offers to the defense involved a guilty plea to one of the firearms charges, because they were more serious offenses in terms of sentencing than possession of counterfeit obligations. In each such instance, the Court conducted an extensive colloquy with the defendant to make sure he understood the nature of the government's offer.[5]

Based on the testimony presented at the hearing, the Court finds that Mr. Ray provided defendant with an estimate of what Mr. Ray thought defendant's sentence might be in the event the government chose not to re-try him on the firearms counts. The discussions did not involve a plea offer. That estimate, regardless of its accuracy, became irrelevant once the United States decided to re-try defendant on the two remaining counts and defendant was convicted on both. Moreover, "[m]isinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel." *Sivley v. Romanowski*, No. 1:06-cv-711, 2010 WL 565120, at *11 (W.D. Mich. Feb. 10, 2010) (quoting *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)). In any event, as with defendant's other ineffective assistance arguments, this claim fails for the additional reason that defendant has provided no evidence that he was prejudiced in any way by what was presented to him.

---

[5] Indeed, defendant's own argument implies that Mr. Ray had presented to him an estimation of his possible sentence, not a plea offer. Defendant claims that Mr. Ray's calculation included a six-level enhancement for the amount of counterfeit bills in defendant's possession, which the sentencing guidelines indicates corresponds to an amount greater than $30,000 and not more than $70,000. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(D). Defendant believes Mr. Ray erred, because the indictment states that defendant was in possession of "approximately 25,000" of counterfeit obligations (Doc. No. 1 at 2), which corresponds to a four-level enhancement. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(C). This, plus defendant's reference to an approximate amount provided in the indictment—not an amount stipulated in an alleged plea offer—further suggests that Mr. Ray presented defendant with an estimation of his possible sentence, not a plea offer. The Court also notes that, because defendant has not yet been sentenced, the exact amount of counterfeit bills found in his possession and the sentencing enhancement resulting therefrom have not been determined.

Because defendant has not shown that Mr. Ray's representation "fell below an objective standard of reasonableness" and that Mr. Ray's performance was prejudicial to his defense, *see Strickland*, 466 U.S. at 688, 692, defendant is not entitled to a new trial on grounds of ineffective assistance of counsel.

**B. § 2255 Motion**

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(b) states, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Section 2255 motions have a one-year limitations period, which begins to run "from the latest of[,]" among other things, "the date on which the judgment of the conviction becomes final." 28 U.S.C. § 2255(f).

The remedy provided in § 2255 "is available only to attack a sentence under which a prisoner is then in custody. It cannot be employed to attack a sentence which is not being served." *Kagen v. United States*, 360 F.2d 30, 32 (10th Cir. 1966). *See also United States v. Boyd*, Nos. 04-80391, 06-CV-13516, 2006 WL 2347525, at *1 (E.D. Mich. Aug. 11, 2006) (ruling that "no § 2255 motion can properly be brought" prior to a defendant's sentencing); *cf. Johnson v. United States*, 334 F.2d 880, 882 (6th Cir. 1964) (holding that a prisoner serving consecutive sentences cannot bring a § 2255 motion for a sentence he has not yet begun to

11

serve). Moreover, it is clearly established that, at an even later time, while a defendant's sentence is pending direct appeal, the district court may not entertain a § 2255 motion (at least in the absence of extraordinary circumstances). *Demarey v. United States*, No. 95-2078, 95 F.3d 1152 (table), at *1 (6th Cir. Aug. 20, 1996) (citing *United States v. Gordon*, 634 F.2d 638, 638–39 (1st Cir. 1980)).

Here, defendant has not alleged that any extraordinary circumstances exist that would warrant review of his § 2255 motion at this time, nor are any apparent to the Court. Because defendant has not yet been sentenced, the district court may not consider his § 2255 motion. Moreover, because the record conclusively shows that defendant is not entitled to relief, notice of the § 2255 motion need not be served upon the United States attorney, nor must the Court hold a hearing thereon. Defendant's § 2255 motion is **DENIED** without prejudice.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for a new trial is **DENIED**, and defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated: May 2, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**